09 CV 7265

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

RECEIVED
AUG 17 2009
U.S.D.C. S.D.N.Y.
CASHIERS

```
----------------------------------X
                                   :
EVAN CHANDLER,                     :
                                   :
                 Plaintiff,        :      Civil Action No.
                                   :
      v.                           :
                                   :      COMPLAINT
NOVARTIS PHARMACEUTICALS           :
CORPORATION, APP PHARMACEUTICALS,  :
LLC, BEN VENUE LABORATORIES, INC.  :      JURY TRIAL DEMANDED
(d/b/a BEDFORD LABORATORIES),      :
HOSPIRA, INC., and TEVA PARENTERAL :
MEDICINES, INC.                    :
                                   :
                 Defendants.       :
                                   :
----------------------------------X
```

Plaintiff Evan Chandler ("Plaintiff"), by his attorneys, Osborn Law, P.C., the Law Offices of Jeffrey C. Bogert and The Powell Law Firm, for his Complaint against defendants Novartis Pharmaceuticals Corporation ("Novartis"), APP Pharmaceuticals, LLC ("APP"), Ben Venue Laboratories, Inc. (d/b/a Bedford Laboratories) ("BVL" or "Bedford"), Hospira, Inc. ("Hospira"), and Teva Parenteral Medicines, Inc. ("Teva") alleges:

## INTRODUCTION

1.   This is a civil action for damages suffered by Plaintiff as a result of his being prescribed and infused with pamidronate.

2.   Pamidronate is in a class of prescription drugs called bisphosphonates.

3.   Pamidronate is and was sold, by defendant Novartis, under the brand name Aredia.  Since May 2001, pamidronate has also been sold as a generic.

4.   Pamidronate is and was administered intravenously and/or by injection.

5.   Plaintiff was infused with pamidronate and, as a result, developed osteonecrosis of the jaw.

## PARTIES

6.   Plaintiff is a citizen and resident of the State of New Jersey, residing in Jersey City, New Jersey.

7.   At all times herein mentioned, Novartis was and is a Delaware corporation, with its principal place of business at One Health Plaza, East Hanover, New Jersey 07936-1080.

8.   At all times herein mentioned, APP was and is a Delaware corporation, with its principal place of business at 1501 East Woodfield Road, Suite 300, East Schaumburg, Illinois 60173-

5837.

9.   At all times herein mentioned, BVL was and is a Delaware corporation, with its principal place of business at 300 Northfield Road, Bedford, Ohio 44146.   At all times herein mentioned, Bedford was and is a division of BVL.

10.   At all times herein mentioned, Hospira was and is a Delaware corporation, with its principal place of business at 275 North Field Drive, Lake Forest, Illinois 60045.

11.   At all times herein mentioned, Teva was and is a Delaware corporation, with its principal place of business at 19 Hughes, Irvine, California 92618.

12.   At all times herein mentioned, defendants did business in the States of New York and New Jersey.

## JURISDICTION

13.   This Court has original jurisdiction over this action under 28 U.S.C. § 1332, in that the amount in controversy exceeds seventy five thousand dollars ($75,000.00)and Plaintiff is a citizen of a State which is different from the defendants.

## FACTUAL BACKGROUND

14.   Defendant Novartis designed, tested, developed, manufactured, labeled, marketed, distributed and sold pamidronate.

15.   Pamidronate was approved by the United States Food

and Drug Administration for treatment of hypercalcemia and bone metastases.

16.  In May 2001, pamidronate became available as a generic medication.

17.  Beginning in or after May 2001, defendants APP, Bedford, Hospira and Teva began manufacturing, marketing, labeling, distributing and selling pamidronate.  These defendants also tested pamidronate.

18.  In 2002 or before, defendants received information from a physician that several of the physician's patients who were given Aredia (pamidronate) were diagnosed with osteonecrosis of the jaw and that he believed a causal relationship existed between the use of Aredia and osteonecrosis of the jaw.

19.  In 2004, another group of physicians published a report about patients being diagnosed with osteonecrosis of the jaw after being given Aredia and Zometa, the successor to Aredia, also designed and manufactured by defendant Novartis.  The report said "the jaw complications presented in this review have had a major negative effect on the quality of daily life for each of these patients" and determined that "bisphosphonates may be at least partially responsible."  Ruggiero, et al., "Osteonecrosis of the Jaws Associated with the Use of Bisphosphonates: A Review of 63

Cases," <u>Journal of Oral and Maxillofacial Surgery</u>, vol. 62, p. 533 (2004).

20.  Plaintiff was prescribed and infused with Aredia and/or generic pamidronate.

21.  As a result of being infused with Aredia and/or generic pamidronate, Plaintiff developed osteonecrosis of the jaw.

22.  As a result of being infused with Aredia and/or generic pamidronate, Plaintiff suffered compensable injuries, including but not limited to the following:

> a.   severe and permanent physical and medical injuries and associated disabilities;
>
> b.   severe past and future pain and suffering;
>
> c.   severe past and future mental anguish;
>
> d.   loss of enjoyment of life;
>
> e.   increased risk of health problems;
>
> f.   past and future medical care and monitoring; and
>
> g.   loss of past and future income.

## FIRST CLAIM FOR RELIEF

## [Strict Product Liability - Design Defect]

23.  Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 22 of the Complaint as if they were set forth here in full.

24.  Defendants tested, manufactured, labeled, marketed, distributed and sold pamidronate.

25.  Pamidronate as designed, manufactured, labeled and sold by defendants is and was defective in design or formulation in that it is and was unreasonably dangerous.

26.  Pamidronate as designed, manufactured, labeled and sold by defendants is and was defective in design or formulation in that its foreseeable risks exceed the benefits associated with the design or formulation.

27.  Pamidronate as designed, manufactured, labeled and sold by defendants is and was defective due to inadequate warnings because defendants knew or should have known that the product created a risk  of harm to consumers.

28.  Pamidronate as designed, manufactured, labeled and sold by defendants is and was defective due to inadequate testing.

29.  As the proximate cause and result of the defective condition of pamidronate as designed, manufactured, labeled and

-6-

sold by defendants, Plaintiff was injured.

<u>SECOND CLAIM FOR RELIEF</u>

**[Strict Product Liability - Failure To Warn]**

30.   Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 22 of the Complaint as if they were set forth here in full.

31.   Defendants tested, manufactured, labeled, marketed, distributed and sold pamidronate.

32.   Pamidronate as designed, manufactured, labeled and sold by defendants was not accompanied by proper warnings regarding possible adverse side effects.

33.   Defendants knew or should have known about the possible adverse side effects of pamidronate, including, but not necessarily limited to, osteonecrosis of the jaw.

34.   As the proximate cause and result of Defendants' failure to properly warn physicians and consumers, Plaintiff was injured.

## THIRD CLAIM FOR RELIEF

### [Negligence]

35.   Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 22 of the Complaint as if they were set forth here in full.

36.   Defendants tested, manufactured, labeled, marketed, distributed and sold pamidronate.

37.   Defendants had a duty to exercise reasonable care in testing, manufacturing, labeling, marketing, distributing and selling pamidronate, including a duty to assure that users, like Plaintiff, did not suffer unreasonable adverse side effects, such as osteonecrosis of the jaw.

38.   Defendants failed to exercise reasonable care in testing, manufacturing, labeling, marketing, distributing and selling pamidronate in that defendants knew or should have known that pamidronate created an unreasonable risk of osteonecrosis of the jaw.

39.   Defendants were negligent in testing, manufacturing, labeling, marketing, distributing and selling pamidronate.

40.   As the proximate cause and result of defendants' negligence, Plaintiff was injured.

-8-

## FOURTH CLAIM FOR RELIEF

### [Breach of Express Warranty]

41.  Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 22 of the Complaint as if they were set forth here in full.

42.  Defendants expressly warranted, by and through statements made by them or their authorized agents, that pamidronate was safe, effective, and fit for its intended uses.

43.  Plaintiff, and his agents, relied on the skill, judgment and representations of defendants.

44.  Pamidronate did not conform to defendants' express warranties in that it was not safe and fit for its intended uses because it caused serious adverse side effects, including osteonecrosis of the jaw.

45.  As the proximate cause and result of defendants' breaches of their express warranties, Plaintiff was injured.

## FIFTH CLAIM FOR RELIEF

### [Breach of Implied Warranty]

46.  Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 22 of the Complaint as if they were set forth here in full.

47.  Defendants impliedly warranted to Plaintiff, and his

-9-

agents, that pamidronate was of merchantable quality and was safe and fit for its intended uses.

48. Plaintiff, and his agents, relied on Defendants' skill and judgment.

49. Pamidronate was not of merchantable quality or safe and fit for its intended uses in that it caused serious adverse side effects, including osteonecrosis of the jaw.

50. As the proximate cause and result of defendants' breaches of their implied warranties, Plaintiff was injured.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff Evan Chandler respectfully prays for relief and judgment against the defendants as follows:

(a) compensatory damages in an amount to be determined at trial;

(b) attorneys' fees, expenses, and costs of this action; and

(c) for any other relief this Court deems just and proper under the circumstances.

## JURY TRIAL DEMAND

Plaintiff respectfully requests a trial by jury on all triable issues pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated:   New York, New York
         August 10, 2009

OSBORN LAW P.C.

By:  _Daniel Osborn_
     Daniel A. Osborn (DO 2809)
     Philip J. Miller (PM 1149)
     295 Madison Avenue, 39th Floor
     New York, New York  10175
     Telephone: (212) 725-9800
     Facsimile: (212) 725-9808

     LAW OFFICES OF JEFFREY C. BOGERT
     501 Colorado Boulevard
     Suite 208
     Santa Monica, CA 90401
     Telephone: (310) 395-5025
     Facsimile: (310) 395-5071

     THE POWELL LAW FIRM, L.C.
     269 South Beverly Drive
     Suite 1156
     Beverly Hills, CA 90212
     Telephone: (888) 238-1998
     Facsimile: (310) 388-1570

     *Attorneys for Plaintiff*
     Evan Chandler

-11-